**FILED**
CLERK, U.S. DISTRICT COURT

05/07/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AH _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CODY HOLMES,<br><br>Defendant. | 2:25-CR-929(A)-JWH<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1341: Mail Fraud;<br>18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1956(a)(1)(B)(i):<br>Concealment Money Laundering;<br>18 U.S.C. § 1014:  Loan Fraud;<br>18 U.S.C. § 1344(2): Bank Fraud;<br>18 U.S.C. §§ 981, 982 and<br>28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. § 1341]

A.    INTRODUCTORY ALLEGATIONS

1.    At times relevant to this First Superseding Indictment:

a.    Defendant CODY HOLMES was a resident of Los Angeles County, within the Central District of California.

b.    Defendant HOLMES was the Chief Financial Officer ("CFO") of Shangri-La Industries, LLC ("SLI"), a company doing business in this district.

c.    Defendant HOLMES also acted as CFO for other companies he, SLI, and others operated, including Shangri-La Development LLC; Shangri-La Construction LP; Shangri-La Capital, LLC; World Mechanical, Inc.; and 12 Conejo, LP (collectively, "the Shangri-La Enterprise").  Among other powers, defendant HOLMES was a signatory on and could conduct transactions using accounts held in the names of Shangri-La Enterprise entities.

d.    The California Department of Housing and Community Development ("HCD") was a California state agency that was intended to help provide affordable housing, including to Californians experiencing homelessness or at risk of experiencing homelessness.

e.    Homekey was a program through which HCD provided grants to local public entities and their public and private partner applicants to acquire, convert, and rehabilitate motels for permanent or interim homeless housing, and to operate the resulting housing projects and provide supportive service to residents.  Some of the Homekey grant money was provided by the federal government.

f.    The City of King ("King City") was a local public entity located in Monterey County, California.

g.    In or around January 2022, SLI, King City, and a nonprofit company ("Company A") jointly applied to HCD for Homekey grant money to acquire, convert, and rehabilitate a motel located at 1130 Broadway St., King City, California, into homeless housing and to operate the resulting project (the "1130 Broadway Project").  King

City committed to pay approximately $450,000 towards the 1130 Broadway Project if the Homekey grant was awarded.

h.    The City of Thousand Oaks ("Thousand Oaks") was a local public entity located in Ventura County, within the Central District of California.

i.    On or about January 27, 2022, SLI, Thousand Oaks, and Company A jointly applied to HCD for Homekey grant money to acquire, convert, and rehabilitate a motel located at 12 Conejo Boulevard, Thousand Oaks, California, into homeless housing and to operate the resulting project (the "12 Conejo Project").  Thousand Oaks committed to pay approximately $1,800,000 towards the 12 Conejo Project, if the Homekey grant was awarded.

j.    In connection with SLI's Homekey applications to HCD (jointly with Company A and local California public entities other than Thousand Oaks and King City) to acquire, convert, rehabilitate and operate four homeless housing projects, between 2020 and approximately April 22, 2022, SLI and the Shangri-La Enterprise received, directly and indirectly through escrow companies, more than $43.9 million in Homekey grant money from HCD.

k.    Although in March 2022, HCD approved the 1130 Broadway Project for a Homekey grant of approximately $12.4 million, by April 27, 2022, neither HCD nor King City had made any payments towards the project.  In addition, although by April 27, 2022, SLI had jointly applied with numerous additional California local public entities for hundreds of millions of dollars more in Homekey grant money to acquire, build, rehabilitate, and operate additional Homekey homeless housing projects, including the 12 Conejo Project, the majority of

3

the remaining projects, including the 12 Conejo Project, were neither approved for Homekey grants nor paid any Homekey grant money.

B.    THE SCHEME TO DEFRAUD

2.    Beginning no later than December 2021, and continuing through at least in or around December 2023, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendant HOLMES, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud HCD, Thousand Oaks, and King City as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises.

3.    The scheme to defraud operated, in substance, as follows:

a.    Defendant HOLMES and others, on behalf of SLI, co-applied with Company A and several local public entities, including Thousand Oaks and King City, for approximately 15 Homekey grants purportedly to acquire, convert, rehabilitate, and operate housing for homeless persons.

b.    In many instances, SLI's applications, and supporting documents provided by defendant HOLMES and SLI, pledged that one or more Shangri-La Enterprise entities would contribute millions of dollars in funds to a project, separate and apart from the Homekey grant money and the money pledged by local public entities including Thousand Oaks and King City.

c.    On or about May 4, 2022, to obtain additional Homekey grant money from HCD, as well as funds committed by Thousand Oaks and King City in the event the respective Homekey awards were approved and funded, and in response to HCD's demand for additional

4

information relating to SLI's financial capacity to support the financial commitments made in connection with each of the Homekey projects applied for, including for the 12 Conejo and 1130 Broadway Projects (the "Capacity Analysis Request"), defendant HOLMES and SLI responded in writing to the Capacity Analysis Request, and made and submitted the following materially false and fraudulent representations concerning SLI and the Shangri-La Enterprise's financial resources and condition:

i.  that Shangri-La Capital, LLC, and Shangri-La Development, LLC committed a combined $163,212,005.00 in cash in connection with the projects;

ii.  that "Shangri-La Development LLC" had an account at Bank of America with an ending balance of approximately $59,283,411.81 on March 31, 2022, as supported by a purported bank statement; and

iii. that "Shangri-La Capital LLC" had an account at Bank of America with an ending balance of approximately $103,928,594.05 on March 31, 2022, as supported by a purported bank statement.

d.  In truth and in fact, as defendant HOLMES then knew, Shangri-La Capital, LLC, and Shangri-La Development, LLC, did not then have $163,212,005 in cash; the bank statements submitted with SLI's response to HCD were false; and the claimed bank accounts did not exist.  Moreover, the Shangri-La Enterprise entities had only a fraction of the claimed amount of cash on hand on March 31, 2022.

e.  On or about June 7, 2022, to obtain additional Homekey grant money for SLI from HCD, including for the 12 Conejo Project, defendant HOLMES supplemented SLI's above response to the Capacity

Analysis Request by making and submitting by email to HCD employees involved with the Capacity Analysis Request the following additional materially false and fraudulent documents (the "emailed bank statements") concerning SLI and the Shangri-La Enterprise's financial condition:

i. a purported bank statement for an account at Ventura County Credit Union in the name of "Shangri-La Capital LLC", claiming that the account had an ending balance of approximately $75,221,579.19 on May 31, 2022.

ii. a purported bank statement for an account at Bank of America in the name of "Shangri-La Capital LLC," claiming that the account had an ending balance of approximately $101,900,922.20 on May 31, 2022.

iii. a purported bank statement for an account at BMO Harris Bank in the name of SLI, claiming that the account had an ending balance of approximately $16,010,597.33 on May 31, 2022; and

iv. a purported bank statement for an account at Bank of America in the name Shangri-La Development LLC, claiming that the account had an ending balance of approximately $62,835,534.49 on May 31, 2022.

f. In truth and in fact, and as defendant HOLMES then knew, the emailed bank statements were false, and the claimed accounts did not exist. The Shangri-La Enterprise entities, moreover, collectively had only a fraction of the claimed amount of cash on hand on May 31, 2022.

g. Between on or about June 9, 2022, and June 16, 2022, HCD approved the payment by mail and wire transfer of approximately

6

$11,989,393 to SLI and on SLI's behalf to acquire, convert, rehabilitate, and operate the 1130 Broadway Project.

h.    On or about June 28, 2022, HCD advised defendant HOLMES, SLI, Thousand Oaks, and Company A that HCD had awarded approximately $26.74 million in Homekey Round 2 grant money for the 12 Conejo Project.  In October 2022, approximately $25.9 million (the "12 Conejo Grant Money") was paid to SLI, using state warrants mailed to SLI in Los Angeles, to acquire, convert, rehabilitate, and operate the 12 Conejo Project.

i.    On or about May 23, 2023, King City paid SLI approximately $100,000 of the $400,000 it had committed to the 1130 Broadway Project.

j.    Following HCD's award and payment of the 12 Conejo Grant Money, defendant HOLMES and SLI caused the 12 Conejo Grant Money to be deposited to a Shangri-La Enterprise account on which defendant HOLMES was a signatory.  Thereafter, at least some of the 12 Conejo Grant Money was used to pay balances on American Express credit card accounts in the name of defendant HOLMES's associate.  In general, the kinds of purchases which created the card balances were unrelated to Shangri-La Enterprise operations, but were instead purchases at well-known luxury retailers.

k.    Between on or about May 6 and on or about July 14, 2023, Thousand Oaks paid to a Shangri-La Enterprise account, including by interstate wire transfer, approximately $1.8 million it had committed to the 12 Conejo Project.

4.    SLI and defendant HOLMES did not finish the conversion and rehabilitation of, and never operated, the 12 Conejo Project and the 1130 Broadway Project.  HCD has not recovered the approximately $25.9

7

million it paid for the 12 Conejo Project and the approximately $11.9 million it paid for the 1130 Broadway Project.  King City and Thousand Oaks have not recovered the approximately $100,000 and $1.8 million paid, respectively, to the Shangri-La Enterprise for the 1130 Broadway Project and the 12 Conejo Project.

C.    USE OF THE MAILS

5.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HOLMES, for the purpose of executing the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| ONE | 7/8/2022 | California Warrant number 61996340 in the amount of $3,084,523.56, payable to SLI at an address in Los Angeles, California, relating to the 1130 Broadway Project |
| TWO | 10/28/2022 | California Warrant number 62848753 in the amount of $6,000,000, payable to SLI at an address in Los Angeles, California, relating to the 12 Conejo Project |
| THREE | 10/31/2022 | California Warrant number 62873197 in the amount of $19,974,713, payable to SLI at an address in Los Angeles, California, relating to the 12 Conejo Project |

COUNTS FOUR THROUGH SIX

[18 U.S.C. § 1343]

A.    INTRODUCTORY ALLEGATIONS

6.    The Grand Jury realleges paragraphs 1, 3, and 4 of this First Superseding Indictment here.

B.    THE SCHEME TO DEFRAUD

7.    Beginning no later than December 2021, and continuing through at least in or around December 2023, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendant HOLMES, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud HCD, Thousand Oaks, and King City as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises.

8.    The fraudulent scheme operated, in substance, as set forth in paragraphs 3 and 4 of this First Superseding Indictment.

C.    USE OF INTERSTATE WIRES

9.    On or about the dates set forth below, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendant HOLMES, for the purpose of executing the scheme to defraud described above, caused the following items to be transmitted by means of wire communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FOUR | 6/7/2022 | Email sent from defendant HOLMES in Los Angeles, California, to HCD employees enclosing four false bank statements, sent via Microsoft servers in Virginia and Iowa |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| FIVE | 7/5/2023 | Transfer of approximately $837,645.73 from a Thousand Oaks account at Wells Fargo Bank to a Shangri-La Construction LP account at Banc of California, processed via electronic systems of Wells Fargo Bank in Minnesota |
| SIX | 7/13/2023 | Transfer of approximately $858,939.37 from a Thousand Oaks account at Wells Fargo Bank to a Shangri-La Construction LP account at Banc of California, processed via electronic systems of Wells Fargo Bank in Minnesota |

COUNTS SEVEN THROUGH ELEVEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

10.  The Grand Jury realleges paragraphs 1, 3, 4, 8, and 9 of this First Superseding Indictment here.

11.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HOLMES, knowing the property involved represented the proceeds of some form of unlawful activity, and which property was, in fact the proceeds of specified unlawful activity, namely, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, and knowing each financial transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, knowingly conducted and willfully caused to be conducted the following financial transactions affecting interstate commerce:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| SEVEN | 11/14/2022 | Payment of approximately $20,000 from a Shangri-La Enterprise entity account at Banc of California ending 5488 to American Express |
| EIGHT | 11/16/2022 | Payment of approximately $20,000 from a Shangri-La Enterprise entity account at Banc of California ending 5488 to American Express |
| NINE | 11/17/2022 | Payment of approximately $20,000 from a Shangri-La Enterprise entity account at Banc of California ending 5488 to American Express |

11

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| TEN | 11/18/2022 | Payment of approximately $30,000 from a Shangri-La Enterprise entity account at Banc of California ending 5488 to American Express |
| ELEVEN | 11/21/2022 | Payment of approximately $10,000 from a Shangri-La Enterprise entity account at Banc of California ending 5488 to American Express |

COUNT TWELVE

[18 U.S.C. § 1014]

A.   INTRODUCTORY ALLEGATIONS

12.   The Grand Jury realleges paragraph 1 of this First Superseding Indictment here.

13.   Private Mortgage Fund, LLC ("PMF"), was a mortgage lending business within the meaning of Title 18, United States Code, Section 20, a private mortgage company, an organization which financed debts secured by interests in real estate and whose activities affected interstate commerce, and was located in Los Angeles County, within the Central District of California.

B.   FALSE STATEMENT

14.   On or about September 23, 2022, in Los Angeles County, within the Central District of California, defendant HOLMES knowingly made a false statement for the purpose of influencing the action of a financial institution, namely, PMF, in connection with an application and loan to be secured by the 12 Conejo Project.  Specifically, defendant HOLMES submitted a Goldman Sachs brokerage account statement claiming that on August 31, 2022, defendant HOLMES held cash, deposits, and money market funds in an account ending 704-7 valued at approximately $3,751,292.74, when, in truth and in fact, and as defendant HOLMES then knew, the balance in the account on August 31, 2022, was approximately $29,799.52.

13

COUNTS THIRTEEN THROUGH NINETEEN

[18 U.S.C. § 1344(2)]

A.    INTRODUCTORY ALLEGATIONS

15.    The Grand Jury realleges paragraph 1 of this First Superseding Indictment here.

16.    Lender A was a financial institution with offices in New York, New York, and Santa Monica, California.

17.    Lender B was a financial institution with offices in Phoenix, Arizona, and elsewhere in the United States.

18.    Lender C was a financial institution with an office in New York, New York.

19.    Lenders A, B, and C were each a "financial institution" within the meaning of Title 18, United States Code, Section 20.

B.    THE SCHEME TO DEFRAUD

20.    Beginning no later than August 2022, and continuing until at least in or around June 2025, in Los Angeles and San Luis Obispo Counties, within the Central District of California, and elsewhere, defendant HOLMES knowingly and with intent to defraud, executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Lender A, Lender B, Lender C, and other financial institutions by means of materially false and fraudulent pretenses, representations, and promises.

21.    The fraudulent scheme operated and was carried out, in substance, as follows:

a.    Defendant HOLMES applied to financial institutions, including Lender A, Lender B, and Lender C, for credit and loans to be extended to defendant HOLMES and entities associated with and controlled by defendant HOLMES (collectively "HOLMES-associated

14

entities"), including entities associated with the 1130 Broadway Project.

b.      To persuade the financial institution lenders, including Lender A, Lender B, and Lender C, to extend the applied-for credit and make the applied-for loans, defendant HOLMES submitted to the financial institutions and their agents false and altered financial account statements for himself and for entities he controlled, including SLI.  The false and altered financial account statements often changed key information on the true financial account statements, including the accountholder names and the value of the assets in the accounts.

c.      The false and altered financial account statements falsely represented and asserted that the credit/loan applicants and defendant HOLMES had millions of dollars in money and assets in the corresponding accounts.  As defendant HOLMES then knew, the true value of the money and assets on the true financial account statements was substantially less than asserted, and sometimes millions of dollars less than asserted.

d.      For example, defendant HOLMES sent Lender C and its agent a false and altered financial account statement, falsely asserting that defendant HOLMES had approximately $13,175,000 on deposit in an account ending 7195 at Citizens Bank as of May 28, 2025, to support his claims about his own assets and net worth in connection with a loan application relating to real property located at 10690 Somma Way in Los Angeles.  In truth and in fact, as defendant HOLMES then knew, the account ending 7195 in defendant HOLMES's name at Citizens Bank held no more than approximately $1,000 during the entire month of May 2025.

15

e.    Defendant HOLMES also submitted additional false and altered documents to misrepresent the financial condition and creditworthiness of persons and entities under evaluation by the financial institutions.  For example, defendant HOLMES falsely represented to Lender A that a line of credit with Company 1 relating to a Shangri-La Enterprise entity was in good standing by fabricating and submitting to Lender A a letter purporting to be from H.W., an employee of Company 1, using H.W.'s name, signature, and position at Company 1, that falsely confirmed that the credit line with Company 1 was in good standing as of the date of the letter.

f.    The false and altered financial account statements and documents that defendant HOLMES submitted were material to financial institutions, including Lender A, Lender B, and Lender C, when deciding whether to approve loans and extend credit to defendant HOLMES and HOLMES-associated entities.

g.    As a result of the scheme to defraud, defendant HOLMES obtained for a Shangri-La Enterprise entity an approximately $4,300,000 loan to refinance debt on the 1130 Broadway Project property, and an approximately $11,000,000 loan for a HOLMES-associated entity to purchase the real property located at 10690 Somma Way, Los Angeles, California.

C.    EXECUTIONS OF THE FRAUDULENT SCHEME

22.    On or about the following dates, in Los Angeles and San Luis Obispo Counties, within the Central District of California, and elsewhere, defendant HOLMES committed the following acts, each of which constituted an execution of the fraudulent scheme:

16

| COUNT | DATE | ACT |
|-------|------|-----|
| THIRTEEN | 11/28/2022 | Defendant HOLMES sent Lender A and its agent two false and altered financial account statements, falsely asserting that SLI had approximately $16,497,970.91 on deposit on August 31, 2022, and approximately $10,069,897.18 on deposit on September 30, 2022, in an account ending 2620 at Ventura County Credit Union |
| FOURTEEN | 12/1/2022 | Defendant HOLMES sent Lender A and its agent a false and altered financial account statement, falsely asserting that defendant HOLMES held assets with a market value of approximately $8,003,903.47 on October 31, 2022, in an account ending 704-7 at Goldman Sachs & Co, LLC |
| FIFTEEN | 1/10/2023 | Defendant HOLMES sent Lender A and its agent a letter purporting to be from H.W., an employee of Company 1, using H.W.'s name, signature, and position at Company 1, that falsely confirmed a credit line with Company 1 was in good standing |
| SIXTEEN | 6/27/2023 | Defendant HOLMES sent Lender B two false and altered financial account statements, falsely asserting that SLC had approximately $8,000,881.76 on deposit on April 28, 2023, and approximately $8,001,518.01 on deposit on May 31, 2023, in an account ending 6215 at Banc of California |
| SEVENTEEN | 6/30/2023 | Defendant HOLMES sent Lender B a false and altered financial account statement, falsely asserting that SLC had approximately $8,001,518.01 on deposit on May 31, 2023, in an account ending 6215 at Banc of California |
| EIGHTEEN | 7/19/2023 | Defendant HOLMES sent Lender B two false and altered financial account statements, falsely asserting that "Holmes Enterprises Comp" had approximately $3,000,000 on deposit on May 31, 2023, and approximately $3,028,335.67 on deposit on June 30, 2023 in an account ending 8691 at CalPrivate Bank |
| NINETEEN | 6/16/2025 | Defendant HOLMES sent Lender C and its agent a false and altered financial account statement, falsely asserting that defendant HOLMES had approximately $13,175,000 on deposit on May 28, 2025, in an account ending 7195 at Citizens Bank |

17

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

23. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant CODY HOLMES's conviction of the offenses set forth in any of Counts One through Six of this First Superseding Indictment.

24. If so convicted, defendant HOLMES shall forfeit to the United States of America the following property:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

25. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant HOLMES, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

18

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(1), (a)(2) and 28 U.S.C. § 2461(c)]

26.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and (a)(2), and Title 28, United States Code, Section 2461(c), in the event of defendant CODY HOLMES's conviction of the offenses set forth in Counts Seven through Nineteen of this First Superseding Indictment.

27.    Defendant HOLMES, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, involved in the offenses set forth in Counts Seven through Eleven, and any property traceable to such property;

(b)  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses set forth in Counts Twelve through Nineteen, including, without limitation:

(1)  The real property located at 10690 Somma Way, Los Angeles, California 90077, Assessor's Parcel Number 4370-005-038; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

28.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so

19

convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                    A TRUE BILL


                                    /S/ _____
                                    Foreperson


TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney



JENNIFER L. WAIER
Chief Assistant United States
Attorney & Chief, Criminal Division

ROGER A. HSIEH
Assistant United States Attorney
Chief, Major Frauds Section

MONICA E. TAIT
SARAH E. SPIELBERGER
NISHA CHANDRAN
Assistant United States Attorneys
Major Frauds Section

20